# IN THE COURT OF APPEALS OF IOWA

No. 21-0866
Filed December 21, 2022

**LARRY TWIGG,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

Larry Twigg appeals the denial of his application to modify sex-offender-registry requirements. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

This is the latest in a recent spate of appeals challenging the denial of an application to modify sex-offender-registry requirements under Iowa Code section 692A.128 (2020).[1]  The applicant here is Larry Twigg, a former high school teacher who was convicted of five counts of lascivious conduct with a minor.  After registering as a sex offender for seven years, Twigg sought removal from the registry.  The district court denied his application, finding he had not successfully completed all required sex-offender-treatment programs and was not classified as a low risk to reoffend.  Twigg appeals, claiming those findings were not supported by substantial evidence.  We agree and reverse the court's ruling.

## I.    Background Facts and Proceedings

In November 2020, Twigg filed an application to modify his sex-offender-registry requirements so that "he no longer is required to register at all under" Iowa Code chapter 692A.  Twigg had to register as a sex offender because of his convictions in 2013 for lascivious conduct with a minor.[2]  *See* Iowa Code

---

[1] *See, e.g.*, *Evans v. State*, No. 21-0904, 2022 WL 3907741, at *1–4 (Iowa Ct. App. Aug. 21, 2022); *Brown v. State*, No. 21-0785, 2022 WL 3420890, at *1–3 (Iowa Ct. App. Aug. 17, 2022); *State v. Oltrogge*, No. 21-0776, 2022 WL 2824774, at *1–6 (Iowa Ct. App. July 20, 2022); *State v. Seidell*, No. 21-0493, 2022 WL 951002, at *1–4 (Iowa Ct. App. Mar. 30, 2022); *State v. Buck*, No. 21-0129, 2022 WL 951067, at *1–3 (Iowa Ct. App. Mar. 30, 2022); *State v. Larvick*, No. 20-1273, 2022 WL 610361 at *1–4 (Iowa Ct. App. Mar. 2, 2022); *State v. Todd*, No. 19-2001, 2021 WL 3075756, at *1–6 (Iowa Ct. App. July 21, 2021); *see also Becher v. State*, 957 N.W.2d 710, 712–17 (Iowa 2021); *Fortune v. State*, 957 N.W.2d 696, 700–10 (Iowa 2021).

[2] Twigg was first convicted of five counts of lascivious conduct with a minor in 2011. His convictions were reversed on direct appeal, and he was granted a new trial based on evidentiary error.  *See generally State v. Twigg*, No. 11-0733, 2012 WL 3590045 (Iowa Ct. App. Aug. 22, 2012).  On retrial, Twigg was again convicted of all five counts.

§ 692A.103 (2013). The convictions stemmed from incidents that occurred at the end of 2009 and beginning of 2010 between Twigg and one of his seventeen-year-old high school students. Twigg's combined sentences for the convictions totaled two years, plus a ten-year special sentence under Iowa Code section 903B.2. His convictions and sentences were affirmed following a second appeal. *See generally State v. Twigg*, No. 13-1094, 2014 WL 3747676 (Iowa Ct. App. July 30, 2014). Twigg had posted bond on appeal, so he was not taken into custody until shortly after procedendo issued in March 2015.

Twigg discharged his sentence in February 2016, upon which his ten-year special sentence began. *See* Iowa Code § 903B.2. According to the supervision history contained in a report prepared by the judicial district department of correctional services, Twigg entered a residential correctional facility on February 6 and was released to his own residence on March 29. He then "remained on parole supervision until his successful discharge on 8/23/2020," following which he sought removal from the registry.

## II.     Statutory Framework

As explained by our supreme court in *Fortune v. State*, modification of sex-offender-registration requirements is a two-step process. 957 N.W.2d at 702–03. The first step for the district court is determining whether an applicant has met the threshold requirements of Iowa Code section 692A.128. *Id.* at 703. If not, "that is the end of the matter and the district court must deny the modification." *Id.* at 705. But if those requirements have been met, "the district court proceeds to the second step," determining whether, "in its discretion, the registration requirements should be modified." *Id.* "In this second step, the district court should consider the

statutory factors and any other factors that the district court finds relevant to the modification issue." *Id.*

The first step is reviewed for the correction of errors at law. *Id.*; *see also Becher*, 957 N.W.2d at 714. This legal question turns on whether the district court's conclusions about satisfaction of the prerequisites for modification are supported by substantial evidence. *See State v. Wallace*, No. 15-1448, 2016 WL 6636681, at *2 (Iowa Ct. App. Nov. 9, 2016). If the criteria are satisfied, the district court's decision on the second step is reviewed for an abuse of discretion. *Fortune*, 957 N.W.2d at 705; *see also Becher*, 957 N.W.2d at 714.

## III. Analysis

As a tier II offender, Twigg had to meet the following threshold requirements in the first step of the analysis to be considered for modification: (a) "[t]he date of the commencement of the requirement to register occurred at least . . . five years prior to the filing of the application," (b) he "successfully completed all sex offender treatment programs that have been required," (c) "[a] risk assessment has been completed and the sex offender was classified as a low risk to reoffend," and (d) he was "not incarcerated when the application is filed."[3] Iowa Code § 692A.128(2)(a)–(d).

In a report filed with the district court, the judicial district department of correctional services found that Twigg had met all those requirements. Breaking

---

[3] The statute also requires that the director of the judicial district department of correctional services supervising the offender stipulate to the modification. *See* Iowa Code § 692A.128(2)(e). But because Twigg was not being supervised when he filed his application, this requirement does not apply. *See Becher*, 957 N.W.2d at 716–17.

the requirements down, the department concluded that Twigg's "registration was initiated on 6/24/2013," which "meets the 5 year requirement."[4] *See id.* § 692A.128(2)(a). As to the second requirement, the department concluded that Twigg successfully completed all sex-offender-treatment programs that were required. *See id.* § 692A.128(2)(b). The report detailed Twigg's participation in six treatment programs while incarcerated, five of which closed with "[c]ompleted [r]equirements" and one with "Noncompliant/Behavioral Issues." Twigg also successfully completed sex offender treatment and aftercare following his release.

Next, the department found Twigg met the third requirement, noting a risk assessment had been completed classifying Twigg at a low risk to reoffend. *See id.* § 692A.128(2)(c). Three standard tests were used for the assessment: the STATIC-99R, Iowa Sex Offense Risk Assessment (ISORA), and the STABLE 2007. When the STATIC-99R was conducted in February 2017, Twigg's score placed him in the "average risk" to reoffend category. But after adjusting the score for his time "at liberty in the community," that category was reduced to "below average risk" to reoffend. The ISORA was conducted in December 2019, and Twigg's score placed him at a "low risk" level to reoffend. The combined score for those two tests assessed Twigg at a "very low risk" to reoffend. On the STABLE 2007, Twigg's score "represent[ed] a risk level of moderate," though the

---

[4] Because Twigg was free on bond during his second appeal, his registration requirement started when he posted that bond after his 2013 conviction. *See Maxwell v. Iowa Dep't of Pub. Safety*, 903 N.W.2d 179, 182 (Iowa 2017) (finding a defendant's release on an appeal bond "constituted a 'release from incarceration' under section 692A.103(1)(c) that required him to register at that time," even though the defendant was never incarcerated between the time sentence was imposed and he posted bond).

combined STATIC-99R/STABLE 2007 projected categorization was either "very low risk" or "below average risk." All-in-all, the department found Twigg's scoring on the ISORA and the combined STATIC-99R/ISORA satisfied the statutory requirement. Finally, the report noted Twigg was not incarcerated when he filed his application. *See id.* § 692A.128(2)(d).

At the hearing on the application, the State resisted modification based on the protective purpose of the registry requirement and the nature of Twigg's crimes. The State also pointed out that one of the three risk assessment tests identified Twigg as having a moderate risk to reoffend. For his part, Twigg's attorney argued that he was now "63 years old, no longer teaching, he's not going back to teaching, [and] that he's judged by the people who supervised him as being low or very low" risk. In an affidavit submitted to the court, Twigg additionally noted he had been married for forty-two years and, if the modification was granted, planned "to move to [his] wife's family home in Ohio."

Following the hearing, and Twigg's notification of the Iowa Supreme Court's recent decisions in *Fortune* and *Becher*, the district court denied the application. Though the court did not specifically follow the two-step analysis laid out in those cases, it issued findings consistent with concluding Twigg met the first, fourth, and fifth threshold requirements for modification. But as to the second requirement, the court found:

> Section 692A.128(2)(b) requires [Twigg] to have successfully completed *all* sex offender treatment programs that have been required. The information provided by the department of correctional services does not state that [Twigg] completed the requirements of "SOTP Track 2: Disclosure." The other sex offender treatment programs listed in the report indicate that [Twigg] "Completed

Requirements" or successfully completed them, but "SOTP Track 2: Disclosure" does not.

Twigg challenges this finding, arguing the department's report unequivocally stated he completed all sex-offender treatment that was required. The State agrees with Twigg, and so do we.

The department specifically concluded Twigg successfully completed all required programs, both by checking the "yes" box for that requirement and by explaining that after his release, Twigg "successfully completed" formal sex offender treatment and aftercare. While the report detailed all of the treatment programs he participated in while confined, it never stated the "SOTP Track 2: Disclosure"—the one the court said was not completed—was a required treatment program. As a result, we conclude the court's finding that this statutory requirement was not met is not supported by substantial evidence. *See Wallace*, 2016 WL 6636681, at *2; *see also Todd*, 2021 WL 3075756, at *5 ("[T]here is not substantial evidence Todd was ever 'required' to complete any sex offender treatment programming. Because no such programming was required section 692A.128(2)(b) was satisfied, and the district court erred in denying Todd's application for modification for want of satisfaction of that criteria . . . ." (footnote omitted)).

Twigg also challenges the court's treatment of his risk assessment, the third threshold requirement. *See* Iowa Code § 692A.128(2)(c). The court appears to have concluded that Twigg did not meet this requirement in noting the STATIC-99R "classifies him as below average risk to reoffend but does not classify him as a low risk to reoffend," and the STABLE 2007 "classifies [him] as a moderate risk

to reoffend, not a low risk." Again, Twigg points to the department's specific conclusion that he met this requirement, as well as the fact that other assessment tools were used that classified him as low risk. *See, e.g., Brown*, 2022 WL 3420890, at *2 ("[T]he results from one assessment instrument cannot be used in isolation, as the best assessment of an offender's risk level comes from viewing the instruments as a whole."). The State once more agrees with Twigg, and so do we. *See Fortune*, 957 N.W.2d at 707 ("The district court cannot disqualify Fortune from eligibility for modification for his assessment that meets the statutory requirement for consideration as a low-risk offender.").

Because the uncontested evidence, along with the State's concessions on appeal, establish that Twigg met the threshold requirements for modification, we conclude he successfully completed the first step of the process. *See Brown*, 2022 WL 3420890, at *2. But what about the second step?

The State argues that even though the district court's ruling "does not align with the structure espoused in *Fortune*—that is to say, there is no clear demarcation which factors the court believed addressed the threshold inquiry or the second, discretionary inquiry," we can still affirm the court's "decision to deny modification because its ruling indicates it reached the second inquiry, is sufficient to permit appellate review and can be sustained on a ground that was not clearly untenable nor unreasonable." We disagree.

Though the court could have stopped after it concluded that two of the threshold requirements were not met, *Fortune*, 957 N.W.2d at 705, it then discussed other factors informing its decision to deny Twigg's application. Those factors included the purpose of the registry, the circumstances of the crime, and

Twigg's planned move to Ohio, which the court found would aid Twigg in "avoiding detection and apprehension if he reoffends." *But see Oltrogge*, 2022 WL 2824774, at *4 (finding no apparent tie between an applicant's move to another state and public safety). But interspersed in that discussion were the court's erroneous findings on the second and third threshold requirements.

We considered a similar ruling in *Brown*, 2022 WL 3420890, at *2, where, as here, the court erroneously concluded the applicant was not classified as a low risk to reoffend but then "went on to discuss additional facts." In reviewing that ruling, this court held:

> The purpose of that discussion [about additional facts] is not clear given the court's finding that Brown was not a low risk to reoffend. The court never said it was analyzing the second step, possibly as a belt-and-suspenders approach to try to rule on step two despite its finding that Brown did not clear step one. Further, the discussion of those facts is so intertwined with the repeated finding that Brown was not a low risk to reoffend that we are unable to determine if the facts discussed were part of the court's analysis on step two. Under these circumstances, we are not in a position to assess whether Brown has satisfied step two. Further proceedings will be needed to do that.

*Brown*, 2022 WL 3420890, at *2. We reach the same conclusion here. *Cf. Oltrogge*, 2022 WL 2824774, at *5 (holding that the court abused its discretion in denying an application to modify sex-offender-registry requirements where, after properly finding the first step was met, the court considered irrelevant and improper factors in the second step).

## IV. Conclusion

We conclude the district court erred in determining that Twigg did not meet the threshold statutory requirements to modify his sex-offender-registry obligations. Because those requirements were met, but we cannot determine

whether the court exercised its discretion in the second step of the modification process, we remand this matter to the court. On remand, the court shall "exercise its discretion under section 692A.128(5) and (6) to determine whether to grant modification and what the scope of any such modification should be." *Brown*, 2022 WL 3420890, at *3; *accord Becher*, 957 N.W.2d at 714. "The proceedings on remand may be conducted on the existing record, [although] the court is not prohibited from taking additional evidence if it deems appropriate . . . ." *Brown*, 2022 WL 3420890, at *3.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**